UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TODD NOVAK, ET AL.                                CIVIL ACTION

VERSUS                                            No. 16-6835

ST. MAXENT-WIMBERLY HOUSE                         SECTION: "J"(3)
CONDOMINIUM, INC., ET AL.

# ORDER AND REASONS

Before the Court are cross motions for summary judgment filed by plaintiffs, Todd and Kate Novak, and defendants, St. Maxent-Wimberly House Condominium, Inc., Michael Skinner, Cynthia Cunningham, Ross Henry, Henry Insurance Services, Inc., Kevin Cunningham, and State Farm Fire and Casualty Company (collectively, "Defendants"). The motions are:

> a *Motion for Partial Summary Judgment Regarding Breach of By-laws Regarding Arbitration and Accounting* **(Rec. Doc. 95)** submitted by Plaintiffs and opposed by Defendants (Rec. Doc. 100);
>
> a partial *Rule 56 Motion for Summary Judgment* **(Rec. Doc. 112)** submitted by Defendants and opposed by Plaintiffs (Rec. Doc. 114)[1];
>
> and a *Motion for Partial Summary Judgment for Misrepresentation and Breach of Contract in Violation of the By-Laws and Louisiana Condominium Act* **(Rec. Doc. 137)** submitted by Plaintiffs and opposed by Defendants (Rec. Doc. 151).

---

[1] State Farm did not actually join the other defendants in filing their motion (Rec. Doc. 112); rather, it adopted their arguments as its own in its *Motion for Summary Judgment* **(Rec. Doc. 113)**. Plaintiffs filed an opposition (Rec. Doc. 115), adopting its own previously asserted opposition arguments. For the sake of simplicity, the Court shall not distinguish between the motions.

Considering the motions, the memoranda, the record, and the law, the Court finds Plaintiffs' motions shall be **DENIED** and Defendants' motion shall be **GRANTED in part** and **DENIED in part.**

## FACTS AND PROCEDURAL HISTORY

This litigation devolved from a dispute over the Plaintiffs' right to short-term lease a condominium unit they purchased in the French Quarter. The Novaks are school teachers who work in California; their plan was to buy a French Quarter condo unit which they could use as a vacation home during summer break but lease during the regular school year when they would be teaching in California.[2]

On February 16 of 2015, in pursuit of their plan to buy a summer retreat which would also turn a profit, the Plaintiffs agreed to purchase one of the five units that make up St. Maxent-Wimberly House (the "House").[3] The House is a 150-year-old French Quarter residence located on Governor Nichols Street.[4] It was made into a condominium in 1990 in accordance with the Louisiana Condominium Act, La. R.S. 9:1121.101, *et seq*.

The Novaks purchased their unit, Unit 1, from Jenny and Michael Tilbury for $379,000 through an "as is," no warranty, cash sale.[5] The purchase agreement gave the Novaks 14 days in which they could inspect the property and terminate the sale based on the results of the inspection.[6] The Novaks exercised this right and hired

---

[2] (Rec. Doc. 177 at 1-3).
[3] (Rec. Doc. 139-5).
[4] (Rec. Doc. 112-1 at 2-5).
[5] (Rec. Doc. 139-5)
[6] (Rec. Doc. 139-5)

2

Henry & Hatchett Inspection Services to inspect the House. Henry & Hatchett concluded the building to be in "fair to good condition,"[7] and the Novaks went ahead and executed their purchase of Unit 1 through an Act of Cash Sale on March 30, 2015.[8]

After ownership of Unit 1 transferred, tensions began to rise between the Novaks and the association tasked with managing and regulating the condominium, St. Maxent-Wimberly Condominium, Inc. ("St. Maxent"), which is controlled by a board of directors (the "Board").[9] Plaintiffs allege that after they purchased their unit, the Board informed Plaintiffs that the By-Laws had previously been amended to prohibit leases of less than one year.[10] Although there is evidence that the Board voted to make this change in 2006, the amendment was never recorded in the conveyance records of Orleans Parish, as required by the By-Laws.[11] Nevertheless, it appears that it was the Board's position that leases for less than a year were prohibited.[12] This short-term rental prohibition was obviously an obstacle to the Novaks' plan to lease the unit nine months out of the year, and the Novaks communicated their dissatisfaction with the short-term rental rule.

---

[7] (Rec. Doc. 139-6 at 10).
[8] (Rec. Doc. 139-9).
[9] St. Maxent's membership is composed of the unit owners of the condominium. According to its By-Laws, the corporation is controlled by a board of directors (the "Board"), also consisting of the owners of the condominium's five units. (Rec. Doc. 95-2). In practice, however, not all members of St. Maxent became directors on the Board, as membership on the board technically requires an election and the consent of the unit owner. Kate Novak, for example, refused to become a director. In 2016, the directors were Michael Skinner, Cynthia Cunningham, Ross Henry, and briefly, Ehab Zagzoug.
[10] (Rec. Doc. 137-3 at 4).
[11] (Rec. Doc. 137-3 at 4).
[12] (Rec. Doc. 139-7 at 20).

In August of 2015, Cynthia Cunningham informed Kate Novak that the Board would consider allowing the Novaks to rent their unit for 6-months but that it would require a vote from the Board.[13] The Novaks never followed up with the Board, because they felt it was "not a very safe place to rent to somebody" due to newly discovered problems with mold and several episodes of vandalism the Novaks experienced.[14] Despite these alleged concerns, the Novaks did make several short-term rentals of their unit. Kate Novak testified that she and her husband used the online marketplace Airbnb to rent their unit for short periods that not only violated St. Maxent's By-Laws but also were illegal pursuant to a 60-day minimum rental period set by the Vieux Carré Commission.[15] The Novaks were fined by the Commission for violating the short-term rental restriction.[16]

Relations between the Novaks and the other members of St. Maxent did not improve. In the fall of 2015, the Novaks allegedly requested to examine St. Maxent's books in accordance with the By-Laws, a request the Board denied.[17] In January of 2016, the Novaks allegedly demanded an accounting of St. Maxent's finances again. They also allege they asked for arbitration pursuant to the By-Laws. The relevant section, § 6.02, states, "In the event there is any dispute among the Unit Owners or among the members of the Board which is not reconciled by a vote pursuant to these

---

[13] (Rec. Doc. 139-7 at 6).
[14] (Rec. Doc. 139-7 at 9).
[15] (Rec. Doc. 139-7 at 12).
[16] (Rec. Doc. 139-7 at 12).
[17] (Rec. Doc. 137-3 at 4).

4

By-Laws, such dispute shall be submitted to arbitration under the Louisiana Arbitration Act."[18]

On February 12, 2016, the unit owners (then, Michael Skinner, Cynthia Cunningham, Ross Henry, Ehab Zagzoug, and Kate Novak) and the Board (same, except Kate Novak refused to act as a director) had their annual meeting.[19] A majority of the Board and unit owners voted to amend the By-Laws by adopting a 1-year lease restriction.[20] The amendment was recorded by the Clerk of Court for the Parish of Orleans on April 19, 2016.[21]

In March of 2016, the Novaks hired Gurtler Bros. Consultants, Inc. to inspect the common areas of the house. The Gurtler report concludes that deferred maintenance had caused various common parts of the House to fall into disrepair.[22] The Novaks then hired Kotter & Associates to create an estimate of the costs to repair alleged defects in the building.[23]

The Novaks then initiated this litigation by filing a Petition to Enforce Agreement to Arbitrate and to Compel Arbitration (Rec. Doc. 1) on May 23, 2016, naming St. Maxent, Michael Skinner, Cynthia Cunningham, Ross Henry, and State Farm as defendants. The Petition asks for relief in the form of an order compelling defendants to submit to arbitration. Plaintiffs subsequently obtained new counsel and filed their First Supplemental and Amended Complaint (Rec. Doc. 13). The first

---

[18] (Rec. Docs. 127-3, at 2, 95-2 at 7).
[19] (Rec. Doc. 95-3).
[20] (Rec. Doc. 112-8).
[21] (Rec. Doc. 112-8).
[22] (Rec. Doc. 137-6).
[23] (Rec. Doc. 137-7).

sentence of the Amended Complaint states that Plaintiffs "withdraw their request for arbitration." Plaintiffs then filed a Second Supplemental and Amended Complaint (Rec. Doc. 53), this one "meant to replace all previous complaints and demands." This complaint pleads seventeen causes of action, including an allegation of civil conspiracy amongst St. Maxent, the Board members, the realtors, and the Tilburys.

Following this amendment to the pleadings, the parties engaged in extensive motion practice. The Court granted summary judgment in favor of the realtors and the Tilburys; only St. Maxent., its board members, and their insurers remain as defendants in this case.

## **STANDARD OF LAW**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be

satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

This case has been needlessly complicated by the Plaintiffs' unwieldy Second Amended Complaint, which meanders for 227 paragraphs. At its essence, Plaintiffs' grievance is simply that St. Maxent is not maintaining the House and is not keeping

7

sufficient documentation for the association members to determine what is being expended on maintenance, all in violation of the By-Laws and the Louisiana Condominium Act. This case should be as easy as determining (1) whether St. Maxent breached these duties as they are clearly set forth in the Act, and if so, (2) whether these breaches resulted in provable damage, presumably in the form of lost rents or a diminution in the value of the Novaks' unit.

This case has been far from easy because Plaintiffs allege, for example, that a "failure to maintain and repair the building" gives rise to not just a cause of action under the By-Laws or the Act, but also claims of negligent or intentional or fraudulent misrepresentation (causes of action 9, 10), intentional or tortious interference with contract (11), intentional or tortious interference with business (12), breach of fiduciary obligation (13), civil conspiracy (16), as well as a derivative action by the Novaks on behalf of St. Maxent (17). Plaintiffs further complicate matters by challenging in their complaint whether the association even constitutes an incorporated entity and by claiming the "Purported Board of Directors of St. Maxent" and St. Maxent's board members are liable individually. The Court begins by reviewing the statutory provisions controlling the administration of condominiums before resolving Plaintiffs' motions, and finally the Defendants' motion.

## I. THE LOUISIANA CONDOMINIUM ACT

The Louisiana Condominium Act defines "condominium" as "the property regime under which portions of immovable property are subject to individual ownership and the remainder thereof is owned in indivision by such unit owners." La.

8

R.S. 9:1121.103(1). An "association,"—such as St. Maxent—is defined as "a corporation, or unincorporated association, owned by or composed of the unit owners and through which the unit owners manage and regulate the condominium." La. R.S. 9:1121.103(8). By law, every association's membership consists exclusively of all of its unit owners. La. R.S. 9:1123.101. If the association is incorporated, it may be as a for-profit corporation, or a non-profit corporation as St. Maxent is. *Id.* In the case it is a corporation, the association is controlled by a board of directors. Pursuant to the Act, St. Maxent's board has the power to: "adopt and amend bylaws and rules and regulations;" "adopt and amend budgets for revenues, expenditures, and reserves and make and collect assessments for common expenses from unit owners;" "regulate the use, maintenance, repair, replacement, and modification of common elements;" "exercise any other powers conferred by the declaration or bylaws;" and "exercise any other powers necessary and proper for the governance and operation of the association." *See* La. R.S. 9:1123.102.

Consistent with scope of the association's powers, it is "responsible for maintenance, repair, and replacement of the common elements" and for keeping "financial records sufficiently detailed to enable the association to comply" with its maintenance obligation. La. R.S. 9:1123.107, 9:1123.108. "All financial and other records shall be made reasonably available for examination by any unit owner and his authorized agents." La. R.S. 9:1123.108. Thus, the "Act imposes a legal obligation upon condominium associations to maintain, repair, or replace the common elements of the condominium building," *FIE, LLC v. New Jax Condo Assn., Inc.*, 241 So. 3d

9

372, 392 (La. App. 4th Cir. 2018), and St. Maxent may be sued for its failure to satisfy this or its record-keeping obligations as a condominium association incorporated as a non-profit corporation. *See id.*; *see also* La. Civ. Code art. 24. St. Maxent's board, however, "is not a juridical person and lacks the requisite procedural capacity" to be sued. *Wells v. Fandal*, 136 So. 3d 83, 91 (La. App. 5th Cir. 2014). While, the board of directors is the decision-maker charged with steering an incorporated association, it is not recognized as an entity to be held separately liable from the association. *Id.* Furthermore, while the liability of individual directors of all corporations is limited, the liability of directors acting on behalf of condominium associations is limited by a specific statute:

> A person who serves as a director, officer, or trustee of a homeowners association and who is not compensated for such services on a salary basis shall not be individually liable for any act or omission resulting in damage or injury, arising out of the exercise of his judgment in the formation and implementation of policy while acting as a director, officer, or trustee of that association, or arising out of the management of the affairs of that association, provided he was acting in good faith and within the scope of his official functions and duties, unless such damage or injury was caused by his willful or wanton misconduct.

La. R.S.. § 9:2792.7.

## II. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiffs have filed two partial summary judgment motions against Defendants. They first ask for summary judgment "as it relates to their demand for arbitration and for an accounting of Homeowners' Association funds, as provided for in the By-Laws." (Rec. Doc. 95). However, Plaintiffs specifically withdrew their request for arbitration when they amended their complaint, and Plaintiffs' Second

10

Amended Complaint (Rec. Doc. 53), as exhaustive as it would appear, does not allege that Defendants breached any contract with Plaintiffs by failing to arbitrate. The Court cannot grant summary judgment on a claim that has not even been properly pleaded.[24]

Likewise, summary judgment is not warranted on Plaintiffs' assertion that Defendants breached the By-Laws by failing to provide an accounting. Plaintiff cites to no record evidence in its memorandum of any request by Plaintiffs that Defendants denied. Elsewhere, Plaintiffs do cite to the unsworn declaration of Malcolm Kelso, who states, "In our pursuit of the alleged amendment, we noticed systemic failures on the part of the BOD, and requested an accounting of the St, Maxent books and records."[25] But that self-serving factual allegation that Plaintiffs requested an accounting—which fails to provide any specifics, including dates—is not enough for the Court to find as a matter of summary judgment that St. Maxent failed to provide an accounting in violation of the By-Laws. At most, the Court can conclude that issues of material fact persist. *See C.R. Pittman Const. Co., Inc. v. Natl. Fire Ins. Co. of Hartford*, 453 Fed. Appx. 439, 443 (5th Cir. 2011) (unpublished).

Plaintiffs filed a second partial summary judgment motion (Rec. Doc. 137) against Defendants for negligent misrepresentation, breach of contract and the By-

---

[24] *See also New Jax Condominiums Assn., Inc. v. Vanderbilt New Orleans, LLC*, 219 So. 3d 471, 480 (La. App. 4th Cir. 2017) (finding district court did not err in choosing not to stay proceedings for arbitration where dispute was between the Board and unit owners and arbitration provision only contemplated disputes among unit owners *or* among the board).
[25] (Rec. Doc. 127-3).

11

Laws, and violation of the Louisiana Condominium Act. First, Plaintiffs ask for summary judgment because St. Maxent misrepresented:

> (1) [that] annual meetings were held; (2) that St. Maxent's funds and expenditures were properly accounted for; (3) that St. Maxent permitted Plaintiffs to inspect all of its books and records; (4) that St. Maxent provided Plaintiffs with all financial information as required by the LCA; (5) that St. Maxent properly elected officers and directors; (6) that St. Maxent properly maintained and repaired the building; and (7) that St. Maxent properly repaired and maintained the building in accordance with the VCC.[26]

Confusingly, Plaintiffs cite to the Defendants' Responses for Request for Production in this litigation as evidence of the Defendants' negligent misrepresentations and yet they allege that "Defendants made these misrepresentations to others prior to Plaintiffs['] purchase of the property."[27] How the Defendants' responses in discovery in 2016 could be considered evidence of representations (false or not) that the Defendants made in 2015, before the Plaintiffs purchased the unit, the Court does not know. Plaintiffs' negligent misrepresentation claims are unsupported by competent summary judgment evidence.

Second, Plaintiffs alleges that Defendants breached its contract with the Novaks by violating the By-Laws by:

> (1) failing to hold annual meetings—until prompted to do so by Plaintiffs, and even then St. Maxent failed to properly notice those meetings as required by the By-laws; (2) failing to properly account for St. Maxent funds and expenditures for more than ten years, though Plaintiffs requested such an accounting; (4) refusing to allow Plaintiffs to inspect St. Maxent's books and records upon request; (5) refusing to provide financial information to Plaintiffs, which information is required for Plaintiffs to comply with the LCA, in violation of La. R.S. § 1124.107; (6) failing to properly appoint officers and directors—the BOD

---
[26] (Rec. Doc. 137-3 at 10-11).
[27] (Rec. Doc. 137-3 at 12).

was improperly elected prior to Plaintiffs purchasing property at St. Maxent, and no elections have taken place since, despite Plaintiffs request for the same; (7) failing to properly maintain and repair the building in accordance with the By-laws and the LCA at La. R.S. § 1123.112, and the requirements of the VCC.[28]

Again, Plaintiffs rely almost entirely on the Defendants' Responses for Request for Production as evidence of these claims. Plaintiffs cite to no relevant case law. They cite to no evidence of damages, claiming without citation to the record that they have been unable to lease or sell Unit 1 due to the alleged breaches of contract. Summary judgment cannot issue on such a showing.

### III. DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT

The Defendants' motion (Rec. Doc. 112) is also for partial summary judgment. Defendants request "dismissal of all of plaintiffs' prior acts claims, and Causes of Action 6, 7, and 8."[29] The Court addresses each of these causes of action in turn and will consider dismissal of Plaintiffs' "prior acts claims" last.

The sixth cause of action is a request for a declaratory judgment that Board improperly amended St. Maxent's by-laws to restrict short-term rentals to 1-year and not 6-months. The Court agrees with Defendants that this demand for declaratory relief is moot, given that the Board properly amended the By-Laws in early 2016 to adopt a 1-year rental restriction.

The seventh cause of action is a demand for damages resulting from the Novaks' inability to rent the unit pursuant to the unauthorized and improper changes to the By-Laws. Defendants argue that this cause of action is likewise moot because

---

[28] (Rec. Doc. 137-3 at 12-13).
[29] (Rec. Doc. 112).

13

the By-laws were properly amended to preclude short-term rentals of less than 1-year. However, the Board did not elect to make this change until February of 2016, and the amendment was not recorded until April of 2016. Therefore, unlike the request for declaratory relief, Plaintiffs can theoretically recover against St. Maxent for any damages they suffered due to lost 6-12-month rentals because St. Maxent improperly enforced such a restriction in contradiction to the properly recorded By-Laws. Summary judgment is denied on the seventh cause of action.

The eighth cause of action is a demand for damages due to the "purported Board's" breach of the By-Laws. The Board is "purported" to exist according to Plaintiffs because "[t]here was not a properly and legally-constituted Board of Directors as per the governing requirements of the By-Laws at any time material to this Complaint."[30] Plaintiffs seemingly argue that the Board was improperly elected in 2016 because written notice was not given 10 days before the annual meeting,[31] even though Plaintiffs had actual notice of the meeting, attended by proxy, and abstained from voting in the election of new directors.[32] Plaintiffs assert that the directors were "operating as individuals" for failing to observe corporate formalities and are therefore liable as individuals for breaching of the By-Laws. Plaintiffs further urge the following nine specific breaches of the By-Laws by the "purported board":

a. Failure to hold annual meetings;
b. Failure to properly account for St. Maxent funds for more than 10 years;
c. Failure to disclose financial statements upon request;
d. Refusal to allow the inspection of St. Maxent's books and records;

---

[30] (Rec. Doc. 53 at 22-23).
[31] (Rec. Doc. 114).
[32] (Rec. Doc. 95-3).

> e. Refusal and/or failure to provide necessary financial information as required by the Louisiana Condo and Homeowners Association Statutes;
> f. Failure to properly appoint officers and directors;
> g. Failure to properly maintain and repair the building;
> h. Failure to properly maintain and repair the building in accordance with the Vieux Carré Commission Ordinance; and
> i. Failure to properly account for funds and expenditures.[33]

Defendants argue the eighth cause of action is unduly speculative to the extent it asks for damages arising from Plaintiffs' membership in an unincorporated condominium association. The Court agrees; Plaintiffs have not even hinted at how they have been damaged by St. Maxent's failure to hold annual meetings or its failure to appoint officers and directors in the years before the Novaks became members of St. Maxent. Moreover, Plaintiffs fail to provide any authority supporting their assertion that St. Maxent should be treated as an "unincorporated [condominium] association" or that the defendant directors should be considered members of a "purported BOD."[34] Plaintiffs appear to suggest the Court should pierce the corporate veil—an act which would require this Court to ask whether shareholders disregarded corporate formalities. *See Riggins v. Dixie Shoring Co., Inc.*, 590 So. 2d 1164, 1168 (La. 1991). However, veil-piercing requires much more than a failure to properly give notice for meetings; generally, the doctrine is applied only where a shareholder has abused the corporate form by using the corporation as an alter ego. *Id.* In determining whether the corporation was a mere alter ego the court considers a host of factors

---

[33] (Rec. Doc. 53 at 22-23). Plaintiffs further allege that these same enumerated failures give rise to many other causes of action against the board members for: negligent and intentional misrepresentation (9-10); intentional or tortious interference with contract (11); intentional or tortious interference with business (12); breach of fiduciary duty (13); and a derivative action by the Novaks on behalf of St. Maxent (17).
[34] (Rec. Doc. 112-8).

such as the "commingling of corporate and shareholder funds" and "undercapitalization." *Id.* There is no evidence of such abuses in this case and Plaintiffs fail to properly raise the theory. St. Maxent's corporate form will not be disregarded.[35] *See Jones v. Briley*, 593 So. 2d 391, 397 (La. App. 1st Cir. 1991).

Accordingly, where Plaintiffs allege that the "purported BOD" breached some duty, this is properly considered an allegation against St. Maxent, the corporate entity "having legal personality under La. Civ. Code art. 24." *See Wells*, 136 So. 3d at 91. Because the Plaintiffs have already named St. Maxent as a defendant, no amendment to the pleadings is necessary. *See id.*

With that clarification, Plaintiffs' eighth cause of action is simply a claim against St. Maxent for breach of the By-Laws, and some of these alleged breaches may give rise to a claim to non-speculative damages. However, the Defendants point out that many of the alleged actions or inactions by St. Maxent occurred in the 10-15 years before the Plaintiffs purchased Unit 1. Defendants argue they are not liable for this conduct occurring before the Novaks were members of the association pursuant to Louisiana's duty and standing requirements. *See* La. Code Civ. Proc. art. 681.

Plaintiffs counter that "Defendants' bad acts prior to Plaintiffs' purchase of the property are indicative of their bad acts after, and indeed are indicative of the manner

---

[35] Neither will the Court disregard the immunity bestowed upon uncompensated directors of associations under La. R.S. 9:2792.7 whose conduct "does not rise to the level of bad faith and willful and wanton misconduct." *Caracci v. Cobblestone Village Condo. Ass'n*, 927 So. 2d 542, 545 (La. App. 5th Cir. 2006).

16

in which they are governing St. Maxent today."³⁶ But this is no argument for liability attaching to St. Maxent's "prior acts," and the Court agrees with Defendants that they owed no statutory, or contractual duties to plaintiffs and that plaintiffs have no claim for damages arising out of events that took place during the years preceding their purchase of a legal interest in the condominium property, whether as a matter of tort, contract, or statute.³⁷ Although restated in a half a dozen different ways and under just as many causes of action, Plaintiffs' essential claim against St. Maxent is for breach of St. Maxent's obligations under the By-Laws because of its failure to maintain the House and its failure to account for its expenses in maintaining (or not maintaining) the House.³⁸ These duties extended to the Novaks only after the Novaks obtained a legal interest in St. Maxent. As the Defendants point out, to the extent the House was not maintained prior to the Novaks' purchase of their unit, the Plaintiffs benefited from a lower purchase price of their unit. The Novaks had an opportunity to have the common areas of the House inspected before their purchase and they in fact did so. After they purchased Unit 1, the association's duty to maintain the House

---

³⁶ (Rec. Doc. 114 at 11).
³⁷ (Rec. Doc. 112-1 at 1-2). Of course, torts do not generally require a legal relationship between parties. A defendant condominium association would be liable for falsely representing that it inspects for termite damage yearly even though a legal relationship with the plaintiff did not form until the plaintiff purchased his unit and discovered termite damage in the common areas. However, as alluded to above, Plaintiffs have failed to provide any evidence of *any* representation by St. Maxent to Plaintiffs before Plaintiffs purchased their unit.
³⁸ If Plaintiffs were injured because St. Maxent failed to "hold annual meetings" or "appoint officers and directors," it is because these failures inhibited the association from carrying out its obligations to maintain the property and keep up financial records documenting this maintenance. As Plaintiffs admit, they allege liability for St. Maxent's corporate disarray as a means to cumulate evidence. The question before the Court today is not an evidentiary one, it is of liability, and the Court finds that St. Maxent may only be held liable for its actions or inactions committed after the Plaintiffs obtained their legal interest in the association.

17

and account for its expenses was extended to the Novaks. It is from this point on that St. Maxent's conduct may give rise to liability.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Partial Summary Judgment Regarding Breach of By-laws Regarding Arbitration and Accounting* **(Rec. Doc. 95)** and *Motion for Partial Summary Judgment for Misrepresentation and Breach of Contract in Violation of the By-Laws and Louisiana Condominium Act* **(Rec. Doc. 137)** submitted by Plaintiffs are **DENIED with prejudice**

**IT IS FURTHER ORDERED** that the *Rule 56 Motion for Summary Judgment* **(Rec. Doc. 112)** and *Motion for Summary Judgment* **(Rec. Doc. 113)** submitted by Defendants are **GRANTED** as to the Sixth Cause of Action, and as to Plaintiffs' allegations of "prior acts" committed by Defendants prior to the Plaintiffs' obtaining legal interest in St. Maxent and are otherwise **DENIED**.

**IT IS FURTHER ORDERED** that no further dispositive motions shall be filed without the Court's leave.

New Orleans, Louisiana, this 11th day of April, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE